# JOHN W. CURRIER v. LUCIUS ROBINSON'S ESTATE.

*Written Instrument ; construction of. Evidence.    Statute of*
*Limitations; payment by one joint contractor.    Wit-*
*ness, contradictory . statements.    Exceptions*
*to argument.*

1.   Although it is the duty of the court to construe a written instrument,. there is no revisable error in submitting it to the jury, where it ap-- pears from the verdict that a proper  construction of it could not have benefited the excepting party.

2.   F., B. & R. agreed among themselves to construct as equal partners a railroad, and that the contract should be taken under the firm style of F. & B. Subsequently the relations of the partners were adjusted upon a new basis, and two written memoranda executed by them to- show what that basis was.  The firm name continued the same after their execution as before.  The supplies for which the plaintiff sued were furnished after.  Defendant claimed that if ever R. was a silent partner in the firm F. & B., he ceased to be from the execution of these written instruments, and introduced the instruments themselves as evidence thereof.  *Held*, that such was the effect of the written memoranda, and that the court should have so instructed the jury, but that the plaintiff could not assign this error inasmuch as such an instruc- tion could not have been beneficial to him.

3.   B. testified, in behalf of the plaintiff, that R. still continued a partner after the execution of these written memoranda.  *Held*, that he might be asked on cross-examination what he understood these written agreements meant, not as calling for a construction of the writings,. but as testing his credibility as a witness.

4.   The admission of a question which has no bearing whatever on the main issue is not necessarily error.

5.   It appeared that there were other  claims against the firm of F. & B. like- the plaintiff's.  B. testified that R. was liable on all these.  It was con- ceded that R. was financially good.  *Held*, proper to inquire of B. on cross-examination as to his conduct in compromising these other claims: for much less than their face.

6.   The plaintiff's debt was outlawed unless renewed by the application of certain land and stock which had been conveyed to him by the railroad- company, but of which the  plaintiff claimed R. was in whole or part the owner.  The court instructed the jury that, "if the property were R.'s, or he were interested in it  as  a member of the firm, or, if not in- terested in it, he treated it as his own and directed the application of

it upon the plaintiff's debt in such a manner that the plaintiff might reasonably understand it was a payment, it would be a renewal of the debt as to R." *Held,* sufficiently favorable to the plaintiff.

7. Plaintiff also claimed to avoid the statute by showing a later payment of $25 made on the account in suit in connection with the sale of certain notes by the plaintiff to R. B. testified for the plaintiff that R. had, upon one occasion, told him that he, R., had bought some notes of the plaintiff and made a payment on this account. *Held,* proper to show by R.'s administrator, having first called the attention of the witness to the conversation, that B. had said to him, previous to the bringing of this suit, that he knew nothing from R. as to any payment of $25 on the plaintiff's account.

8. Where counsel in argument is giving an improper effect to certain testimony, but upon having his attention called thereto by the court, disclaims any such intention, and proceeds in a manner not objected to, there is no ground for exception.

This was an appeal by the plaintiff from the action of commissioners in disallowing his claim against the estate of Lucius Robinson. The declaration contained the common counts and an account charging the estate on the ground that the said Lucius Robinson was a partner in the firm of Foster & Baker, contractors for the construction of the Missisquoi & Clyde Rivers railroad. Pleas, the general issue and statute of limitations. Trial by jury at the September Term, 1886, Ross, J., presiding. Verdict for the defendant. Exceptions by the plaintiff.

The evidence of the plaintiff tended to show that Asa B. Foster, Luther Baker and the intestate Lucius Robinson were equal partners in the firm of Foster & Baker; that this firm took the contract for and did construct the Missisquoi & Clyde Rivers railroad, and that the account sued for by the plaintiff accrued against the said firm in the construction of said railroad. The plaintiff did not claim that the intestate was liable except as a member of that firm.

The principal witness to these facts was the said Baker, who testified that it was agreed between them from the first that they were to take this contract as partners and share alike in the profits, but that inasmuch as Robinson was the president of the Missisquoi & Clyde Rivers Railroad Company, with whom the contract was to be made, it was mutually agreed that it should be taken in the names of Foster & Baker and under that firm

style ; that the contract was so taken, and that under it the three- went on and constructed the road, and that the account of the plaintiff accrued in the course of such construction.

It appeared that the Missisquoi & Clyde Rivers railroad was- the Vermont portion of a continuous line running from New- port, Vt., to Montreal, P. Q., and that the said Foster owned or controlled the Canada part. The defendant claimed that whatever- might have been the original relations of these three persons, after- a certain time Foster determined that they must be so adjusted that he should assume the construction of the Missisquoi road; and own it when completed for use in connection with his- Canada road ; and that an arrangement was made by which the previous partnership was dissolved, and Robinson and Baker- both became the hired servants of Foster, Baker's name being still retained because certain moneys which were to be advanced by the Connecticut & Passumpsic Rivers Railroad Company could not be made available unless some responsible resident of- the United States was one of the contractors.

As evidence of this, the defendant introduced two written memoranda, the execution of which at their respective dates was conceded, and which were as follows :

" We the undersigned, being mutually interested in the Mis- sisquoi & Clyde Rivers Railroad, hereby agree that the interests connected in and with said railroad shall be arranged and carried out as is hereinafter set forth and described. In order to insure the speedy construction of said M. & C. Rivers Railroad, it shall be mortgaged to the Connecticut & Passumpsic Rivers Railroad, for the sum of three hundred and fifty thousand dollars, or such sum less as may be required to build said road. The said road shall be leased to the South Eastern Counties Junction Railroad of Canada. Said lease to be perpetual upon the condition of pay- ing the interest on the three hundred and fifty thousand dollars, as above, and such dividends on the stock subscribed and issued as is paid upon the South Eastern Counties Railroad upon a *pro- rata* basis as to the mile on each road. It is also agreed that the contract now made and existing for a certain portion or-

division of said Missisquoi & Clyde Rivers Railroad with Messrs. Col. A. B. Foster and L. Baker, shall be so modified, altered or amended as to extend to the village of Newport by way of North Troy village and Newport Center, at such prices as may be agreed upon, not to exceed thirty thousand dollars per mile, in money, town bonds and stock all included.

All stock transferred to Messrs. Foster & Baker on account and for the payment of constructing said road, or any part thereof, shall be transferred by Baker to Foster, or such person as he shall designate. The South Eastern Counties Railroad shall have the entire control of the Missisquoi and Clyde Rivers Railroad by perpetual lease, majority of stock and such directors as may be desired by said Col. A. B. Foster, and the same to be carried into effect so soon as the arrangement is completed with the Conn. & Pass. Rivers Railroad as to the mortgage and running of business arrangements, so-called, as to secure the three hundred and fifty thousand dollars for the building of the road. It is also understood and agreed that Luther Baker and Lucius Robinson shall be allowed and paid so much money as they have actually paid out for and on account of the said Missisquoi & Clyde Rivers Railroad. Said money may be paid out of the funds received from the Conn. & Pass. Rivers Railroad, from time to time, in such sum or sums as may be agreed upon by said Foster, Baker & Robinson, if not otherwise provided for.

It is also agreed that there may be taken out of the cash received from said Conn. & Pass. Rivers Railroad, or town bonds, or stock, as each may elect, the sum of twelve thousand dollars each by said Foster, Baker & Robinson, at such time as may be agreed upon, in such sum or sums, from time to time, as they may mention hereafter, the same to be done within one year from date.

Should there be a move to extend said railroad beyond Newport village or to Island Pond, or any other point, said Baker & Robinson shall together have the same interests in the construction for such extension, or the profits arising therefrom, as said Foster, or the South Eastern Counties Railroad or their successors may have.

In regard to the mortgage and lease of said railroad, the said Baker & Robinson shall express no preference for first of record, only that it be done to secure the funds mentioned above, $350,-000. And it is further agreed that the said Baker & Robinson shall render such aid in the construction of said road in regard to their time and services as may be desired by said Foster, without further charge, except for cash paid out. In short, it is mutually understood and agreed that the said Baker & Robinson shall do whatever and all they can do reasonably for the cheap and quick construction of said railroad, and for the benefit generally, of the said Foster, and in his interest with the road and all its connections and workings of the same, both directly and indirectly, until such times as relieved by said Foster or those in his interests. To all of which we three persons named in the foregoing, hereunto pledge each to the other to carry out the above contract in good faith to the best of our ability. Subscribed to on the part of L. Robinson and L. Baker at Newport, this 26th day of February, A. D. 1872, and on the part of A. B. Foster at Montreal the 28th day of February, A. D. 1872.

(Signed,)
A. B. FOSTER,
L. ROBINSON,
LUTHER BAKER."

" Referring to a memorandum signed by the undersigned, it is hereby agreed as the final understanding that Mr. Foster and Mr. Baker are to be jointly but not separately entitled to draw all the moneys, stocks and bonds falling due under any contract for the construction of the Missisquoi & Clyde Rivers Railway, and upon payment of the sums to Mr. Baker and Mr. Robinson respectively, which are mentioned in the said memorandum, Mr. Foster shall be free from any further demands or accounting in respect of such contract of construction in as far as regards Mr. Baker and Mr. Robinson.

A. B. FOSTER,
L. ROBINSON,
LUTHER BAKER."

March 2d, 1872.

Currier *v.* Robinson's Estate.

The court did not construe these written instruments but submitted them to the jury as follows:

"Well, gentlemen, you are to remember that this is a thing of considerable length of standing. It is conceded by Mr. Prouty for the defendant (I do not know as Mr. Thompson said that) that if Mr. Baker's testimony is to be believed, and full credit to be given to it, and you find the truth to be as he testifies, then the plaintiff is entitled to recover. But they say on the part of the defense that, taking this contract of February, 1872, viewing it in all its bearings, remembering the relation which these parties all sustained to the road, and all the circumstances, it shows that Mr. Robinson was not to be responsible thereafter on any of the contracts, whatever might have been his relations to it; that he was to have a stipulated sum, that he was not to appear in the contracts and was not to be liable. That is what the defense claim.

You have heard the comments upon this contract. You will have it before you. Mr. Crane has made his comments and gone over the contract in detail, where they start off by saying that they are mutually interested. It is for you to say what they meant by that; whether they meant that they were equally and jointly interested, or whether they meant simply that Mr. Robinson had an interest in there because he had got some money in. He had a further interest as a director and interested in the Passumpsic Road; he had an interest as the president and director in this road.

It is pretty apparent, I think, taking the whole contract together, that he did not mean to say that after that contract they were going to be equally interested. Because that contract, as I understand it, (and this is not controverted by either side) puts the liability upon Mr. Foster to pay all the bills as between these three parties to it, and gives him all the profits that may accrue from the contract over and above the twelve thousand dollars which is to be given to Mr. Baker and Mr. Robinson."

The entire account of the plaintiff accrued subsequently to the execution of the above mentioned memoranda.

The witness Baker testified that notwithstanding the execution of these written agreements, the three still continued parties as before. In view of this claim, counsel for the defendant were permitted to inquire of him on cross-examination what he understood the meaning of these memoranda to be and what effect, if any, they produced on the previous relations, between Foster, Robinson and himself.

It appeared that there were other claims similar to the plaintiff's, which had been compromised by the witness Baker. He testified that Robinson was liable upon them all in the same manner as upon this, and was financially responsible. In view of his testimony in this respect defendant's counsel was allowed to interrogate him as follows upon cross-examination :

" Question by Mr. Prouty.

Q. Do you remember ever having told me that Lucius Robinson was not liable on these claims ?

Judge Ross—Suppose you state the time and place.

Q. Do you remember that I had for collection against Foster & Baker some three or four claims; one claim was in favor of Thomas Laraby, and another claim in favor of Adams, on which a judgment had been obtained against Foster & Baker by me ?

A. I think you had such claims. I think I remember that.

Q. How were these claims settled ? (Objected to.)

Q. Were claims for supplies and materials furnished in the construction of the Missisquoi & Clyde Rivers road and for fencing done on the road ?

A. I think they were.

Q. How were those claims settled ?

A. I think I made you three propositions and one of them you accepted.

Q. Which one was it I accepted ?

A. I told you that they were, for aught I knew, that the claims were all good claims, valid claims; I didn't know why they wasn't; and that I would give you my note for one hundred cents on the dollar, and see it was paid as soon as I could. (Repeats.) I stated that I made three propositions, to take a

certain amount of money and settle it; I would give him a cer-
tain amount of money on each claim, or I would give him my
note in full.

Q. What per cent of these claims did you pay in settlement ?

A. I don't remember.

Q. Well, it was fifteen per cent. (Objected to. Exceptions.
by plaintiff.)

Q. Did I have conversation with you in regard to these
claims just previous to the time when the settlement was.
effected ?

A. I think you did.

Q. In the course of that conversation did I tell you that I
had heard that Lucius Robinson was liable on these claims and
did I ask you whether that was true or not ?

A. I think you did, and I told you you was a lawyer and I was
not, and you knew what he had done and what he could do; you
must fix it yourself.

Q. Did you tell me that Lucius Robinson wasn't any more
liable than I was ?

A. I don't know as I did."

The plaintiff for the purpose of showing that Robinson was a
silent partner was allowed to prove that Foster, Baker & Rob-
inson had been sued as joint contractors and a judgment secured
against them for a claim similar to the plaintiff's. To rebut this
the defendant proposed to show that, although Robinson was
well known to be responsible, such claims against the firm of
Foster & Baker had been suffered to outlaw to large amounts,
and in this view introduced one John A. Prouty, who testified
as follows :

" Q. Did you furnish lumber that went into the Missisquoi &
Clyde Rivers R. R. ?

A. I did.

Q. To what amount?

A. It is impossible for me to tell the exact amount; quite a
large amount.

Q. Tell how much if you know.

A. They made payments once or twice; I, can't recollect those amounts. Later than that they owed us in the neighborhood of a thousand dollars.

Q. Was that account ever paid?

-Objected to.

A. Partially paid.

Allowed. Exception by plaintiff.

Q. State whether a suit was brought on that claim.

A. There was a suit brought.

Q. Against whom?

A. Against Baker & Foster, I think, and Mr. Baker's property was attached.

Q. How much of the debt was secured by that suit?

A. Not any of it.

Q. How much of the debt was ever paid?

Objected to.

Counsel proposes to show that five or six hundred dollars was allowed to outlaw.

Ruled out."

(NO CROSS-EXAMINATION.)

The plaintiff's claim was outlawed as to Robinson, unless the effect of the statute had been in some way removed. The plaintiff claimed that a payment had been made within the requisite time by way of certain land and certain shares of the capital stock of the Missisquoi & Clyde Rivers Railroad Company which had been conveyed to the plaintiff by said corporation and applied on this account. It appeared that both the stock and land came to the contractors as a part of the price for the construction of the road, and there was no evidence tending to show that Robinson had any interest in either unless by virtue of the fact that, as a member of the firm of Foster & Baker, he was one of such contractors; but the evidence did tend to show that he was anxious to have the conveyance made to the plaintiff, and the application made on this debt. Upon this branch of the case the court charged:

" But this land stood in the railroad company, and Mr. Wilson was authorized to sell and convey it. It seems Mr. Robinson was desirous to have the application go upon this debt, for some reason, according to the testimony. Apparently that land being outside of what is necessary for the road bed, according to the contract, (the company was to furnish the road bed, but was not to furnish outside of it), apparently under the contract of 1872 that belonged to Mr. Foster, that is, really, in equity, belonged to him. How it is paid for is not shown. Whether the company paid for it or whether somebody else paid for it. The stock that was passed over on that occasion was a subscription to the company. Between the contractors and the company this stock equitably belonged, and the avails of it, to the contractors, Mr. Baker and Mr. Foster. If Mr. Robinson was really a contractor after that and interested in it as a contractor and interested in the profits to be derived from it (but I do not say that he was, after that contract), then he would have been interested in the stock. But after that contract of 1872, as I understand it, this stock, in equity, and the avails of it, belonged, as between these three parties, to Mr. Foster, and if he ordered it paid, and Mr. Robinson had done nothing about it, it would be a payment by Mr. Foster rather than Mr. Robinson. But if Mr. Robinson took part in that and treated either the land or the money that Mr. Foster furnished as his own, and directed it to be made as a payment in such a manner that Mr. Currier and those who had to do with the matter, as reasonably prudent persons, had a right to understand and did understand that it was a payment by him, why, that would be a renewal. But if it was not his property and he was not interested in it, and he did not treat it in that way, it would not be a renewal although it was made in December, 1876."

The plaintiff claimed another payment of $25, and introduced testimony tending to show that Robinson had paid him that amount on this account in connection with the sale of certain notes by the plaintiff to Robinson. The witness Baker testified in reference to this claim of the plaintiff that on one occasion

the had a conversation with Robinson, who then said to him that he had recently sold some notes to the plaintiff and made him a payment on this railroad account. In reference to this testimony, having laid the proper foundation upon the examination of the witness Baker, the defendant administrator, Geo. S. Robinson was permitted to testify as follows:

"Q. Did Luther Baker tell you that he (referring to Lucius Robinson) was not a contractor? State what he said on that subject.

A. He stated to me that he was not one of the contractors.

Q. Did Luther Baker understand that Currier claimed to recover of the estate because Lucius Robinson was a contractor?

A. He did.

Q. Whether anything was said in conversation, as to payment of $25, that Currier claimed had been made to him?

A. There was.

Q. In that conversation with Mr. Baker or one of these conversations at the Memphremagog House, did you tell him John W. Currier claimed that your brother Lucius had made a payment of $25 to renew the account, and did you ask him if he knew anything from Mr. Robinson as to that payment?

A. I did tell him so.

Q. You asked him that question?

A. I did.

Q. In answer to that question did he tell you that he did not know anything from Lucius Robinson?

A. He said that he did not know anything about it from Lucius Robinson, that he never heard him say anything about it, that all he knew about it was that he heard from J. W. Currier. He not only said it once, but said it on two or three different occasions."

For the purpose of impeaching the witness Baker, two witnesses were permitted to testify that he had told them previous to the trial and at about the time of the transaction that Robinson was not a partner in the construction of this railroad. In

the argument counsel for the defendant commented on this testimony as though it were evidence in chief to prove this fact. Counsel for the plaintiff objected to this line of argument, and the court interposed, whereupon the counsel who was arguing disclaimed any intention to be so understood, and proceeded in a manner not objected to.

*Dickerman & Young,* for the plaintiff.

It fairly appears from the exceptions that Robinson was a member of the firm of Foster & Baker in the taking of the contracts for the construction of this railroad, and there is no evidence in the case tending to show that he had ceased to be such a partner before the debt in suit was contracted, except the two memoranda of February and March, 1872. The effect of these memoranda is not to dissolve the partnership, but simply to secure Foster in the control of the Missisquoi & Clyde Rivers railroad when built.

The court submitted the construction of these memoranda to the jury. This was error, inasmuch as they should have been construed by the court, and is error revisable by this court. *Collamer* v. *Langdon et al.,* 29 Vt. 32; *Driggs* v. *Burton,* 44 Vt. 124; *Rowell* v. *Fuller,* 59 Vt. 688; *Chase* v. *Martin,* 6 N. E. Reporter 837 (Me.); *Mixer* v. *Williams,* 17 Vt. 457; *Gove et al.* v. *Downer,* 59 Vt. 139 ; *Wason* v. *Rowe,* 16 Vt. 525 ; *Hammond* v. *Port Royal and Augusta R. Co.,* 15 S. C.

The same authorities show that it was error to allow counsel for the defendant to ask the witness Baker what he understood these writings to mean.

The testimony of John A. Prouty was irrelevant and inadmissible.

The charge of the court as to the effect of the application of the land and stock was wrong. It in effect said that these written memoranda transferred the title of the other partners to Foster.

The exception to the argument of counsel was well taken. The fact that he did not *intend* to be so understood is of no con-

sequence. *Bullard* v. *Boston and Maine R. R.*, 2d N. E. Reporter, page 901, N. H.; *Perkins* v. *Burley*, 6 N. E. Reporter 817; *Sterling* v. *Sterling*, 41 Vt. 80; *Wood* v. *Willard*, 36 Vt. 82; *State* v. *Meader*, 54 Vt. 126.

*C. A. Prouty* and *L. H. Thompson*, for the defendant.

1. The defendant was permitted to ask the witness Baker his understanding of these memoranda, not for the purpose of obtaining a construction of the writings, but as legitimate matter of cross-examination in testing the accuracy and consistency of his testimony. In view of the witness'. testimony it was a matter of legal right with the defendant; but had it not been, the court might have permitted this line of inquiry as a matter of discretion. 1 Greenleaf on Evidence (12th Ed.) ss. 446, 449; *Johnson* v. *Jones*, 1 Black (U. S.) 209.

2. Neither party could possibly have been helped or injured by the testimony of John A. Prouty. Its admission was not therefore reversible error. *Sampson* v. *Warner*, 48 Vt. 257.

3. We understand that the court did in effect construe these written memoranda to the jury. But suppose it did not, there is no error; for it is apparent that a proper construction of them could not have benefited the plaintiff. *Danforth* v. *Evans*, 16 Vt. 538; *Castleton* v. *Langdon*, 19 Vt. 210; *Bouve* v. *Cottle*, 3 N. E. Rep. 388; 143 Mass. 310.

The effect of these memoranda was to dissolve the partnership previously existing. From and after their execution Robinson and Baker were in reality simply the hired servants of Foster. The court below should at the trial, and this court ought now to construe these written agreements and give judgment for the defendant. *Morris* v. *Kelley*, 13 Atlantic Reporter 523; *Thompson et al.* v. *Roberts et al.*, 24 How. (U. S.) 233.

The charge as to the effect of the application of the stock and land as a payment to avoid the statute of limitations was as favorable as the plaintiff could ask. *Carlton & Manning* v. *Ludlow Woolen Mill*, 27 Vt. 496; *Carlton et al.* v. *Ludlow Woolen Mill*, 28 Vt. 504; *Bailey* v. *Colvin*, 51 Vt. 366; *McConnell* v. *Merrill*, 53 Vt. 149; *Greene* v. *Morris*, 58 Vt. 35.

The exception to the argument of counsel should not be sustained. Whatever error there may have been was made in good faith. It is only when the right of argument is abused that an exception will lie. *Rea* v. *Harrington*, 58 Vt. 190; *Boyle* v. *State*, 105 Ind. 469; *Shulah* v. *State*, 105 Ind. 289.

The opinion of the court was delivered by

TYLER, J. As stated in the briefs of counsel on both sides, the main controversy in this case was whether or not the intestate, Lucius Robinson, was in his life time a silent partner in the firm of Foster & Baker and as such partner liable to the plaintiff for materials furnished and labor performed by him for the firm. The written agreements were important evidence bearing on this question. In considering the matter of their construction it is necessary to understand how the case had proceeded prior to their production in evidence and what they were intended to operate upon. It is stated in the second paragraph, page third of the exceptions, that it appeared that it was in the first instance agreed between these three parties that the contract should be taken in the name of Foster & Robinson, but, as Robinson was a director in the Missisquoi and Clyde Rivers railroad corporation and president thereof, so that he could not appear as contractor, it was suggested that Baker's name be substituted for his and that it was so done with the assent of all three. Here is certainly a strong indication that Robinson was interested in the contract, although his name did not appear therein for the reason stated. Baker testified positively that the three were equally interested. In paragraph second on page second it is stated that it appeared from the testimony of Baker, which testimony was not contradicted, that, " before the formation of this arrangement between these three parties an understanding had been arrived at," etc., and in the next paragraph it is said that it appeared " that after said arrangement had been entered into between these three persons and the work in Richford begun under it, Foster became dissatisfied with it and refused to go on unless some new understanding could be arrived at between

(14)

them by which he should be sole owner of the M. & C. R. railroad when completed, and that such negotiations were had in the premises that the relations of the said three persons were adjusted on a new basis," etc. We infer from what the court said to the jury, as appears on the thirteenth page of the exceptions, that it was practically conceded by defendant's counsel that but for the written agreements the case showed Robinson to be a contractor and liable to the plaintiff for the amount of his specification.

Assuming that the three were co-partners up to the time of the execution of the agreements the court should have instructed the jury what effect the agreements had upon the partnership. In the submission of the agreements to the jury for their construction there was error. We cannot assume that the jury construed the agreements correctly, for if they found an original partnership and a dissolution thereof by the written agreements, *non constat* they may have found that the three parties subsequently became co-contractors as to the plaintiff. If, however, the legal effect of the agreements was to dissolve the then existing partnership it was error that did not harm the plaintiff. Upon a careful examination of the agreements we can give them no other reasonable construction than that the " new basis " upon which the relations of the parties were adjusted was that Robinson and Baker were to be allowed and paid the amount of money they had actually paid out for and on account of the M. & C. R. railroad, and that the three men were to have the sum of $12,000 each from the cash received from the Conn. & Pass. R. R. or stocks or bonds to that amount, and the said Foster was thereafter to be free from any further demands or accounting to Baker or Robinson in respect to such contract, although the firm name was continued.

This being the obvious meaning of the agreements, the error of the court was one of which the plaintiff could not complain.

2.  In view of Baker's testimony that the three men continued liable for all contracts entered into in the name of the firm, notwithstanding the written memoranda, it was clearly within the legitimate scope of cross-examination for the defendant's

counsel to ask him what he understood the relations of the three persons were after the execution of the written memoranda. The question did not require him to construe the memoranda, but it was proper in that way to test the truthfulness of his testimony that Robinson's liability continued after the memoranda were executed, the plaintiff's claim having subsequently accrued.

3. As tending to establish Robinson's liability as a silent partner the plaintiff produced evidence which showed that the three men were jointly sued for payment for labor performed and materials furnished the firm in the construction of the road in the towns of Richford and Newport, and that judgment was obtained against the three jointly as co-contractors. The defendant undertook to rebut this evidence by proof that Stimpson & Co. had a claim of one thousand dollars against the firm, and that although Robinson was financially responsible, only a part of this claim was paid. John A. Prouty, who was a member of the firm of Stimpson & Co., was allowed to testify, subject to plaintiff's objection, that this claim of his firm was only partially paid. It would have been improper to have admitted the evidence offered that other creditors of Foster & Baker suffered their claims to outlaw or settled them at a discount, as tending to establish the fact that Robinson was not a partner, and the court so held. The answer of the witness, Prouty, that the debt of his firm was "partially paid" had no bearing on the main question in issue.

4. According to Baker's testimony, Robinson was liable on all these contracts of the firm. As testing the correctness of his testimony it was competent to show by him on cross-examination how he as a partner had conducted with reference to other claims against the firm for which Robinson was liable if liable for any. The witness had stated that he did not remember what per cent he paid on these claims in settlement thereof and counsel then asked him if it was fifteen per cent. This question and the entire cross examination were proper as tending to show that his compromise of these claims was inconsistent with his statement as to Robinson's liability.

5.   As to the application of the land and stock the court instructed the jury that if the property were Robinson's, or he was interested in it as a member of the firm, or if not interested in it, he treated it as his own and directed the application of it upon the plaintiff's debt in such a manner that the plaintiff might reasonably understand it was a payment, it would be a renewal of the debt as to Robinson, otherwise it would not. This was a correct statement of the law and was certainly favorable to the plaintiff.

6.   As to the testimony of the administrator : The point of Baker's testimony was that Robinson as a partner in the firm of Foster & Baker had admitted to him that he had been doing some business with the plaintiff in reference to certain notes and that he had made him a payment on the railroad account.    It is true that the witness was not inquired of specifically as to the twenty-five dollar payment, but this was not so far collateral that the defendant was bound by his answer.

7.   In his address to the jury, defendant's counsel made improper use of the testimony of the two witnesses who were improved by the defendant to impeach the witness Baker. Upon objection by plaintiff's counsel the court interposed, " whereupon said counsel disclaimed any intention to give the jury to understand that said testimony could be given such effect and did not further so claim."   While courts cannot be too careful in restricting the arguments of counsel to legitimate evidence, in view of the immediate disclaimer of counsel we think the plaintiff was not injured and that this exception should not be sustained.   The ground for it is not stronger than that in *Rea* v. *Harrington*, 58 Vt. 181.

*The other exceptions taken were not insisted on in the argument.   We find no reversible error in the trial and the judgment is affirmed.*